805 So.2d 142 (2002)
In re R. Neal WILKINSON.
No. 2001-B-2310.
Supreme Court of Louisiana.
January 15, 2002.
Opinion on Grant of Rehearing in Part February 22, 2002.
*143 Charles B. Plattsmier, Baton Rouge, Robert S. Kennedy, Jr., Counsel for Applicant.
Amy E. Counce, Francis A. Rougeou, Jr., Reymond N. Wilkinson, Baton Rouge, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Neal W. Wilkinson, an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS
In August, 1996, Kimberly Saucier Emanuel approached respondent about handling the succession of her father, who had passed away, leaving Mrs. Emanuel as executrix of his estate. Respondent advised Mrs. Emanuel that he could not take the case because he was involved in an election campaign. However, he introduced Mrs. Emanuel to Paul Doug Stewart, a Mississippi law school graduate who was working as a law clerk in respondent's office and had taken the Louisiana bar examination in July, 1996. Respondent advised Mrs. Emanuel that Mr. Stewart could handle the necessary preliminary matters in the case under respondent's supervision, and then fully assume the representation once he was admitted to the bar. Based on respondent's assertions, Mrs. Emanuel agreed to the arrangement, and gave respondent $650, which he agreed to hold in trust for Mr. Stewart's anticipated expenses. According to respondent, he cautioned Mr. Stewart not to give any legal advice to Mrs. Emanuel.
Days following the meeting, Mr. Stewart drafted a letter to Mrs. Emanuel, under both his name and respondent's name, confirming that respondent's law firm would be handling the succession matter. The letter promised to keep Mrs. Emanuel informed on a variety of issues on which she might need "further legal advice." Respondent was generally made aware of the contents of the letter by telephone, and directed his secretary to send it out under his signature. Mr. Stewart also signed the letter.
The following day, respondent sent a letter to the will's notary and witnesses asking them to execute affidavits to permit the probate of the will. After sending these letters, respondent had no further involvement in the succession. He never spoke with Mrs. Emanuel again, nor did he ever review her file. Although he discussed the fee arrangement with Mr. Stewart, respondent never specifically inquired about the details of Mr. Stewart's handling of the succession proceeding.
*144 In early September, 1996, still prior to Mr. Stewart's bar admission, the heirs began receiving notices from one of the mortgage creditors. While Mr. Stewart attempted to resolve the matter with the mortgage company, he was unable to successfully handle the problem. Mr. Stewart never advised respondent of the problems with the mortgage company.
In October, 1996, Mr. Stewart was admitted to the practice of law in Louisiana. Approximately four months later, Mr. Stewart left respondent's firm for other employment. Mr. Stewart specifically advised respondent's secretary that he was leaving the succession file. The file sat unattended for several months in respondent's office.

DISCIPLINARY PROCEEDINGS
Subsequently, Mrs. Emanuel learned that incorrect advice given by Mr. Stewart resulted in creditors foreclosing on certain succession property. As a result, Mrs. Emanuel filed a disciplinary complaint against Mr. Stewart for mishandling the succession. The ODC ultimately closed its investigation into the complaint because Mr. Stewart was not admitted to the bar at the time of the misconduct.
However, the ODC initiated its own investigation into respondent's conduct, based on his failure to supervise Mr. Stewart during the time in question. As a result of this investigation, the ODC filed one count of formal charges against respondent alleging violations of Rules 1.1 (incompetence), 1.2 (lack of due diligence), 5.1 (failure of attorney to supervise a subordinate attorney) and 5.3 (failure to properly supervise a non lawyer assistant) of the Rules of Professional Conduct. Subsequently, it amended the formal charges to include a violation of Rule 5.5 (assisting a nonmember of the bar to engage in the unauthorized practice of law). Respondent filed answers denying any misconduct on his part.

Formal Hearing
At the formal hearing, Mr. Stewart testified Mrs. Emanuel knew he was unlicensed and that he could not formally begin the succession proceedings until his admission to the bar. He maintained, prior to his admission, he had only gathered information and conducted research. He conceded he gave Mrs. Emanuel erroneous legal advice regarding the property, but stated respondent was unaware he had given this advice. Mr. Stewart testified respondent had instructed him not to give any legal advice, but noted that respondent did not make any attempts to determine whether he had given advice to her during their meeting, which occurred in respondent's absence.
John Taylor, an attorney who shared office space with respondent during the time in question, testified he was present when respondent and Mr. Stewart initially met with Mrs. Emanuel. He corroborated Mr. Stewart's testimony that respondent made it clear he wanted no role in the succession matter. Mr. Taylor stated he personally cautioned Mr. Stewart on the limits of what could be done on the file prior to his bar admission because he was concerned respondent allowed Mr. Stewart to meet with Mrs. Emanuel in private.
Respondent testified Mrs. Emanuel knew he had no interest in handling her case. As to his referring the matter to Mr. Stewart, respondent asserted he never thought he placed his client at risk because he believed the case was a simple succession matter that would not require any initial legal advice. Respondent stated he had no knowledge Mr. Stewart had given erroneous legal advice, and that he was unaware there were any problems with the succession until the complaint was filed against Mr. Stewart. As to the letter of *145 representation forwarded to Mrs. Emanuel, respondent alleged he was only generally made aware of the contents of the letter by telephone, whereupon he instructed his secretary to sign and mail the letter out. He maintained that had he known the full contents of the letter, he probably would not have sent the letter out. While he asserted he did not violate the Rules of Professional Conduct, respondent admitted if he had known about the problem earlier, he would have stepped in to do something about it.
In mitigation, respondent noted, at the time in question, his wife was suffering from a terminal illness. He traveled to New Orleans after work each day, where she was hospitalized, and returned each evening to care for his children. His wife passed away soon after.

Recommendation of the Hearing Committee
The hearing committee determined the ODC failed to sustain its burden of proving respondent's conduct rose to the level of a professional violation. In support, the committee noted respondent made it clear to all involved that he would not handle the succession. Moreover, it pointed out Mr. Stewart never informed respondent he had given advice to the heirs, and respondent never knew, or had reason to know, that Mr. Stewart had given the legal advice. Further, it stated Mr. Stewart accepted responsibility for his actions and their consequences. Finally, the committee recognized no member of the public had made a complaint against respondent for the problems associated with the succession. Accordingly, it dismissed the charges pending against respondent.

Recommendation of the Disciplinary Board
The disciplinary board determined the hearing committee properly concluded the ODC failed to prove by clear and convincing evidence respondent violated Rules 1.1 (incompetence), 1.2 (lack of due diligence) and 5.5(a) (assisting a non lawyer in the unauthorized practice of law). However, the board found the committee erred in failing to find violations of Rules 5.1 (failure of attorney to supervise a subordinate attorney) and 5.3 (failure to properly supervise a non lawyer assistant).
As a threshold matter, the board determined there was an attorney-client relationship between respondent and Mrs. Emanuel. In support, it relied on the lengthy letter of representation forwarded to Mrs. Emanuel, as well as the letters directed to the notary and witnesses to the will, all of which were sent under respondent's signature.[1] In light of this attorney-client relationship, the board determined respondent failed to supervise Mr. Stewart's work in the succession matter, in violation of Rule 5.3(b). Although the board recognized respondent advised Mr. Stewart not to give legal advice prior to his bar admission, it pointed out respondent took no measures to determine what transpired at the meeting between Mrs. Emanuel and Mr. Stewart in his absence. It found respondent's failure to supervise was further demonstrated by the fact respondent was "only generally made aware of the contents of the letter of representation drafted by Mr. Stewart and that he testified he would not have sent it out had he known the full contents of the letter. Thus, although it recognized respondent may not have known of the erroneous legal advice given by Mr. Stewart *146 at the time, the board found his negligent failure to supervise Mr. Stewart resulted in actual harm to his client.
The board also determined respondent violated Rule 5.1(b) when he failed to make reasonable efforts to ensure Mr. Stewart conformed to the Rules of Professional Conduct once Mr. Stewart was admitted to the bar. In support, the board stated respondent took no effort to oversee Mr. Stewart's handling of the succession matter. It noted respondent reviewed pieces of the file, but he never reviewed the file in its entirety, even after Mr. Stewart left the firm. Therefore, the board concluded respondent negligently breached duties owed to his client, causing the succession to pay $9,292.91 to redeem the seized property.
As aggravating factors, the board recognized respondent's refusal to acknowledge the wrongful nature of his misconduct, his substantial experience in the practice of law (admitted in 1975) and his indifference to making restitution. As mitigating factors, the board noted the absence of selfish motive and respondent's personal or emotional problems stemming from the illness and death of his wife, as well as his good character and reputation.
Relying on Standard 7.3 of the ABA's Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the board determined that a reprimand is the baseline sanction for respondent's misconduct. However, it deviated upward to impose a short suspension due to respondent's complete indifference to the matter and the significant injury to his client. Accordingly, it recommended a sixty-day suspension.
Respondent filed an objection to the imposition of a sanction. As a result, the case was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).

DISCUSSION
The record supports the disciplinary board's conclusion that an attorney-client relationship existed between Mrs. Emanuel and respondent. Despite respondent's assertions that he did not take the case, he authorized the sending of a letter to his client in his name assuming the representation, and sent letters to other persons in his capacity as attorney for Mrs. Emanuel.
While respondent may have not been directly responsible for the incorrect legal advice given by Mr. Stewart to Mrs. Emanuel, we find he breached his professional obligation to Mrs. Emanuel by failing to properly supervise Mr. Stewart. Respondent essentially turned the case over to Mr. Stewart, knowing at the time that Mr. Stewart was not licensed to practice law in Louisiana and was unfamiliar with Louisiana succession law. Respondent did not speak with Mrs. Emanuel after his initial meeting, nor did he review her file.
Under these circumstances, we conclude respondent breached his fundamental obligations to Mrs. Emanuel under Rules 5.1(b) and 5.3(b) to ensure the actions of his non-lawyer assistant (and later subordinate attorney) conformed to the rules of professional conduct. Although the evidence indicated respondent did not know Mr. Stewart gave the incorrect advice to Mrs. Emanuel, respondent, as the client's attorney, retains compete responsibility for the representation. As we explained in Louisiana State Bar Ass'n v. Edwins, 540 So.2d 294, 299 (La.1989):
A lawyer often delegates tasks to clerks, secretaries, and other lay persons. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product ... A lawyer *147 cannot delegate his professional responsibility to a law student employed in his office ... The student in all his work must act as agent for the lawyer employing him, who must supervise his work and be responsible for his good conduct.
See also Louisiana State Bar Ass'n v. Keys, 567 So.2d 588 (La.1990) (thirty day suspension imposed on an attorney, who failed to supervise secretary's use of $42,400 in client funds from a succession account for office operating expenses).
Having found respondent violated Rules 5.1(b) and 5.3(b) in failing to supervise Mr. Stewart's handling of the matter, the sole question remaining is the appropriate sanction for this misconduct. In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass'n v. Guidry, 571 So.2d 161 (La.1990). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent's misconduct caused actual harm to his client, causing the succession to pay nearly $10,000 to redeem the foreclosed property. Aggravating factors are present, including respondent's refusal to acknowledge the wrongful nature of his misconduct and his substantial experience in the practice of law. We also recognize the presence of mitigating factors, including respondent's personal problems and the lack of a dishonest or selfish motive.
Having considered these factors, we conclude the appropriate sanction for respondent's misconduct is a sixty-day suspension from the practice of law.

DECREE
Upon consideration of the record, briefs and oral argument, it is ordered that R. Neal Wilkinson be suspended from the practice of law for a period of sixty days. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

ON APPLICATION FOR REHEARING
PER CURIAM.
Rehearing granted for the sole purpose of amending this court's judgment of January 15, 2002 to provide that respondent's suspension shall become effective on June 1, 2002. In all other respects, the application for rehearing is denied.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] The letter drafted by respondent, directed to the witnesses and notary, stated: "Mrs. Kim Saucier Emanuel has retained our firm to represent her as executrix of her father's estate."