840 So.2d 1191 (2003)
In Re Bernard Joseph BLAIR, II.
No. 2002-B-2164.
Supreme Court of Louisiana.
February 25, 2003.
Rehearing Denied April 25, 2003.
*1192 Charles B. Plattsmier, Baton Rouge, Eric K. Barefield, New Orleans, for Applicant.
Ernest L. Jones, New Orleans, for Respondent.
PER CURIAM.
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Bernard Joseph Blair, II, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
For over twenty years, respondent's mother-in-law, Beverly Victorianne, lived next door to Alicemae Casanave, a woman in her eighties. Ms. Victorianne, a retired nurse, became close friends with Ms. Casanave and assisted her in her daily needs. In the summer of 1997, Ms. Casanave's cousin, Mary Ellen Strong, took Ms. Casanave from New Orleans to Atlanta for a period of time. During that time, Ms. Casanave purportedly executed a quitclaim deed, dated August 2, 1997, which provided that Ms. Casanave was transferring her home, valued at approximately $100,000, to Ms. Strong for the sum of $10.[1]
When Ms. Casanave returned to New Orleans, her health and mental acuity had declined. She advised Ms. Victorianne and her other friends she had been abducted against her will and feared that Ms. Strong would put her in a nursing facility in order to get her home. Another neighbor contacted Ms. Casanave's next of kin, Marguerite Thompson, Ph.D., a niece who resided in New York, to advise of her aunt's abduction and her marked change in health.
In early August, 1997, Dr. Thompson arrived in New Orleans. She consulted respondent about protecting Ms. Casanave's legal rights. After meeting with Dr. Thompson, Ms. Casanave and Ms. Victorianne, respondent suggested Ms. Casanave execute a power of attorney in favor of Dr. Thompson. Respondent had Ms. Casanave and Dr. Thompson each sign an employment contract providing that he would be paid a retainer, in addition to an hourly fee for rendered legal advice and services.
On August 7, 1997, respondent prepared the power of attorney by which Ms. Casanave gave Dr. Thompson a power of attorney. Approximately one month later, respondent drafted a new power of attorney making Dr. Thompson and Ms. Victorianne co-mandataries over Ms. Casanave's affairs. He also prepared interdiction papers in the event Ms. Casanave became incapacitated. Respondent completed the work on September 15, 1997, and was paid $867.50 directly by Ms. Casanave. Dr. Thompson did not pay respondent any *1193 fees. Thereafter, Dr. Thompson returned to New York.
Over the course of the following two to three weeks, respondent had numerous discussions with Ms. Casanave regarding the preparation of a will.[2] In these discussions, Ms. Casanave advised respondent that she only wished to leave a portion of her estate to Dr. Thompson and wanted to leave the bulk of the estate to various religious organizations and certain relatives and friends, including respondent's mother-in-law, Ms. Victorianne, and her two children. Ms. Casanave provided respondent with a one-page document, dated September 30, 1991 (six years earlier), written and signed by her which enumerated her bequests. Specifically, the document provided she wanted to leave her home and its contents to Ms. Victorianne and her children. Respondent prepared the will as instructed, which included, among others, testamentary dispositions to Dr. Thompson, and respondent's mother-in-law, brother-in-law and spouse. The will was executed on October 11, 1997, in the presence of two witnesses.
Almost two years later, in June, 1999, Ms. Casanave passed away. Shortly thereafter, Dr. Thompson learned that Ms. Casanave's will made disposition to persons other than herself and her daughter.[3] At about the same time, Ms. Strong produced the quitclaim deed that purportedly showed she was the actual owner of Ms. Casanave's home.
Thereafter, Dr. Thompson retained attorney George Chaney to challenge the will, on the ground Ms. Casanave lacked testamentary capacity. In connection with this litigation, Dr. Thompson moved to disqualify respondent from representing the succession, primarily on the basis that his testimony would be required to determine the decedent's capacity. Respondent, on behalf of himself and Ms. Victorianne (the executrix of Ms. Casanave's succession), filed a reconventional demand against Dr. Thompson and Mr. Chaney.
Around the same time, respondent's wife, who had retained independent counsel, learned respondent had engaged in a prohibited transaction by drafting a will which provided a testamentary gift to her as his spouse.[4] Accordingly, she renounced her interest in the succession.
During the course of the litigation, respondent gave a deposition stating he was retained for the purpose of protecting Ms. Casanave from being abducted again by her cousin. Respondent testified he considered Ms. Casanave to be his only client, and that he had never received legal fees from Dr. Thompson. Respondent maintained that the second power of attorney was drafted because Ms. Casanave wanted his mother-in-law included in the revised power of attorney to assist in handling Ms. Casanave's affairs with Dr. Thompson, who intended to return to New York. Additionally, respondent testified Ms. Casanave made it clear she did not wish to *1194 leave her entire estate to Dr. Thompson, and that she did not want the terms of her testament disclosed to anyone.
Mr. Chaney, Dr. Thompson's counsel in the succession litigation, conducted his own investigation into the testamentary capacity of Ms. Casanave. He spoke to several persons, including Marie Langie, who was a longtime friend of the decedent. She advised him that although Ms. Casanave was "fragile" when she returned from Atlanta, her mental state had improved at the time the will was drafted and that she had testamentary capacity. Mr. Chaney also spoke to respondent and, after determining respondent had been unaware of the prohibition on attorneys from making a testamentary gift to an immediate family member in a client's will, he concluded there was no fraud involved on respondent's part. Based on his investigation, Mr. Chaney concluded the will should be given effect as written, in the absence of the disposition to respondent's wife.
Ultimately, other counsel was retained to represent the succession. The parties entered into settlement negotiations, culminating in a consent judgment. Pursuant to this judgment, Ms. Strong received the house in accordance with the quitclaim. Respondent's wife's portion was returned to the estate and the remaining legacies were left intact.

DISCIPLINARY PROCEEDINGS

Formal Charges
Based on a complaint from Dr. Thompson, the ODC commenced an investigation into respondent's conduct in this matter. Based on this investigation, the ODC filed one count of formal charges against respondent alleging he violated Rules 1.4 (failure to communicate), 1.7(b) (engaging in a conflict of interest) and 1.8(c) (preparing an instrument for a client giving a member of the attorney's immediate family a testamentary gift) of the Rules of Professional Conduct.
Respondent filed an answer. He admitted he had violated Rule 1.8 when he drafted the will providing for a testamentary disposition in favor of his wife, but maintained any violation was unintentional. He denied that he failed to communicate with his client. He further denied the ODC's allegations that he engaged in a conflict of interest by representing Ms. Casanave and Dr. Thompson simultaneously. According to respondent, he did not consider Dr. Thompson to be his client in the matter. Moreover, he claimed he had no duty to inform Dr. Thompson of the contents of Ms. Casanave's will, as Ms. Casanave expressly requested that he keep the existence and the contents of the will confidential.

Formal Hearing
A formal hearing was conducted before the hearing committee. The parties submitted documentary evidence, including the record from the contested succession. In addition, several witnesses testified at the hearing, including Mr. Chaney, Dr. Thompson, Dr. Thompson's daughter and respondent.
Mr. Chaney testified he believed respondent was unaware of the Rule 1.8(c) prohibition which bars an attorney drafting a will from making a testamentary gift to himself or an immediate family member. Further, he stated respondent took immediate and concerted efforts to cure the problem.
Dr. Thompson testified respondent and Ms. Victorianne used undue influence over Ms. Casanave to gain control over her home and its contents. According to Dr. Thompson, her aunt would never have bequeathed the house to a non-family member.
*1195 Respondent denied that he exercised any influence over Ms. Casanave regarding the testamentary dispositions to be made. He asserted he was unaware of the prohibition of making a testamentary gift to his wife when he drafted the will, and contended the issue never concerned him because he and his wife have a separate property regime. Respondent expressed remorse for his unintentional misconduct.

Recommendation of the Hearing Committee
The hearing committee determined the ODC proved by clear and convincing evidence that respondent engaged in a conflict of interest in violation of Rules 1.7(b). The committee rejected respondent's position that Ms. Casanave was his only client, noting that the undisputed evidence established Dr. Thompson had signed a retainer agreement, the committee found no merit in respondent's argument that Ms. Casanave was his only client. It also determined respondent improperly represented his mother-in-law as executrix and himself in the will contest litigation instituted by his own client, Dr. Thompson.
The committee also found respondent violated Rule 1.8(c), as he admitted to drafting a will making a prohibited legacy to his wife. The committee concluded respondent's violation was unintentional and negligent, and that he expressed remorse for his actions. However, the committee found respondent's "willful blindness" of the potential conflicts of interest suggests a heightened potential for risk to the public if unchecked.
Despite its finding that respondent represented Dr. Thompson, the committee determined there insufficient evidence to find respondent violated Rule 1.4 by failing to communicate with her. It concluded respondent had no obligation to inform Dr. Thompson that he was drafting a will for Ms. Casanave. In support, it relied on respondent's uncontradicted testimony that Ms. Casanave urged respondent to not disclose the existence and terms of her will.
Citing Standards 2.7 and 4.32 of the ABA's Standards for Imposing Lawyer Sanctions,[5] the hearing committee determined the baseline sanction for respondent's misconduct was suspension with probation. The committee concluded vulnerability of the victim was the only aggravating factor. It recognized in mitigation respondent's lack of prior disciplinary record, full disclosure and cooperation with the ODC, inexperience in the practice of law (admitted in 1991, approximately six years at the time of the misconduct) and remorse.
Based on its findings, the hearing committee recommended that respondent be suspended from the practice of law for a period of six months, with all but one month deferred. It further proposed respondent be subjected to a practice monitor during his suspension, attend an additional hour of CLE in the area of ethics and professionalism, and attend a course in law practice-management skills.

Recommendation of the Disciplinary Board
The disciplinary board concurred in the findings of the hearing committee relative *1196 to the violations of Rules 1.7(b) (engaging in a conflict of interest) and 1.8(c) (preparing an instrument for a client giving a member of the attorney's immediate family a testamentary gift). It also agreed with the committee there was insufficient evidence of a violation of Rule 1.4 (failure to communicate) noting that, because the ODC's position accepts that both Ms. Casanave and Dr. Thompson were respondent's clients, respondent was obligated to maintain Ms. Casanave's client-confidences as instructed and could not have informed Dr. Thompson of the will's contents.
The board determined respondent negligently violated duties owed to his client, resulting in actual injury in that a lawsuit spanning one year ensued following the filing of the petition to probate Ms. Casanave's will. The board pointed out the suit was largely based upon allegations concerning respondent's breach of his ethical duties to his clients, which also called into question the validity of the portions of the will.
Like the committee, the board agreed the baseline sanction was a suspension, and adopted the aggravating and mitigating factors cited by the committee. However, the board modified the committee's proposed sanction, and recommended that in addition to the six month suspension recommended by the committee, respondent be placed on supervised probation for six months and be required to successfully complete the ethics school program offered through the Louisiana State Bar Association ("LSBA"). One board member dissented to the leniency of the proposed sanction.
The ODC filed a timely objection to the board's recommendation. As a result, the court docketed the matter for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96 1401 (La.11/25/96), 683 So.2d 714.
The record clearly supports the conclusion that respondent violated Rule 1.8(c) by preparing a will which contained a legacy in favor of his wife. Respondent admitted to violating this rule, although he claims his violation was unintentional.
With regard to the conflict of interest charges, the central finding by the committee was its determination that respondent represented Dr. Thompson. Respondent asserts that it was his intent (and, he believed, the intent of all the parties) that his representation of Dr. Thompson was contingent on Ms. Casanave's interdiction. Because this event never took place, respondent maintains his representation of Dr. Thompson never commenced. However, respondent's position is contradicted by the retainer agreement between Dr. Thompson and respondent, which places no limitations or conditions on the representation. Under these circumstances, the committee's factual finding that respondent represented Dr. Thompson is not clearly wrong.
Having represented Ms. Casanave and Dr. Thompson simultaneously, it is obvious that an irreconcilable conflict existed when *1197 Ms. Casanave asked respondent to prepare a will that adversely affected Dr. Thompson's rights. That conflict was exacerbated when respondent represented the executrix of Ms. Casanave's will in connection with Dr. Thompson's suit challenging the validity of the will. These actions plainly violate Rule 1.7(b).
The ODC asks us to find a violation of Rule 1.4 on the ground that respondent failed to communicate with Dr. Thompson regarding his involvement in the preparation of Ms. Casanave's will. This we decline to do. Of course, as stated above, respondent should not have placed himself in this position. However, once he did, we cannot fault respondent for respecting Ms. Casanave's wishes that the existence of and terms of her will not be disclosed to anyone.[6]
Finding respondent engaged in professional misconduct, we now turn to the discussion of an appropriate sanction. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152. The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95 1472 (La.9/15/95), 660 So.2d 839.
The appropriate sanction for a violation of the conflict of interest provisions of Rule 1.7 has generally been a suspension, all or part of which may be deferred.[7] This court has not previously had the occasion to confront a violation of Rule 1.8(c), but the baseline sanction would appear to fall within the same general range. As an aggravating factor, we recognize vulnerability of the victim. In mitigation, we find respondent lacks a prior disciplinary record, was relatively inexperienced in the practice of law at the time of the offense and has demonstrated sincere remorse for his actions.
Considering the case as a whole, we conclude respondent's actions were the result of negligence rather than due to any improper motive.[8] Accordingly, we find a *1198 three-month suspension from the practice of law is responsive to the misconduct.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Bernard Joseph Blair, II be suspended from the practice of law in Louisiana for a period of three months. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court's judgment until paid.
NOTES
[1] It is unclear from the record whether Ms. Casanave actually executed the deed. There is a suggestion that the deed was forged or that she lacked capacity and/or was under duress when she prepared the quitclaim.
[2] Respondent testified at the formal hearing that the first three discussions regarding the preparation of the will took place in the presence of Dr. Thompson during her stay in New Orleans. In contrast, Dr. Thompson alleged she was never present for a conversation where her aunt discussed the desire for or terms of a will. Her testimony also contradicts the testimony of her own daughter, Georgene Thompson.
[3] Dr. Thompson had not seen her aunt since visiting New Orleans at the time the power of attorney was drafted.
[4] Rule 1.8(c) provides "a lawyer shall not prepare an instrument giving the lawyer or person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."
[5] Standard 2.7 provides probation is a sanction that allows a lawyer to practice law under specified conditions. The provision notes that probation may be imposed alone or in conjunction with a reprimand or admonition, as well as a condition to readmission or reinstatement.

Standard 4.32 provides suspension is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interest, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.
[6] Under the ODC's theory, respondent is placed in a "catch-22" position: if he were to reveal the information regarding the will to Dr. Thompson, he would violate his duty to Ms. Casanave, but if he did not, he would be guilty of failure to communicate with Dr. Thompson.
[7] See, e.g., In re: Faucheux, 02-0054 (La.5/24/02), 818 So.2d 734 (fully deferred six month suspension, subject to a one year period of probation imposed on attorney who, among other things, engaged in a conflict of interest in connection with a domestic proceeding); In re: Caillouet, 01-2461 (La.11/9/01), 800 So.2d 367 (fully deferred six month suspension, subject to a six month period of probation, imposed on district attorney who represented a husband in a divorce matter after his wife filed criminal battery charges); In re: Toups, 00-0634 (La. 11/28/00), 773 So.2d 709 (fully deferred six month suspension, subject to a two year period of probation, imposed on an assistant district attorney who, while representing a wife in divorce proceedings, failed to withdraw from the representation when he learned the wife had filed criminal battery charges against her husband and, rather, acquiesced in the request of the husband's attorney, who was also an assistant district attorney, that the case against his client be continued or dismissed).
[8] In In re: Grevemberg, 02-B-2721, 838 So.2d 1283, (La. 2003), rendered this day, we imposed a one-year suspension for a violation of Rule 1.8(c). A greater sanction was justified in that case because we found the attorney knowingly disregarded his ethical obligations under Rule 1.8(c) by continuing litigation at a time when he was clearly aware he was in violation of the rule. By contrast, respondent's violations of the rules in the instant case were more negligent than intentional.