*491 ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.*
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Charles E. Cabibi, Jr., an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
At all times relevant herein, respondent was the sole attorney practicing with the Metairie law firm of Cabibi and Cabibi, and his daughter, Cynthia Cabibi Bird, was the sole employee of the law firm. Ms. Bird serves as the firm’s receptionist, secretary, paralegal, and bookkeeper; she is also a real estate agent, a licensed title agent, and a notary public. Respondent’s practice is primarily confined to title work.
In May 1998, Mrs. Grace Rubio Hirsch, a longtime friend of the Cabibi family,[1] contacted the law firm of Cabibi and Cabi-bi and requested a power of attorney appointing her niece as her agent. Ms. Bird “filled in the blanks” on a standard form power of attorney, which Mrs. Hirsch signed at respondent’s law office on May 21, 1998. Respondent notarized the document and gave it to Mrs. Hirsch. Respondent did not charge or collect a fee for this service.
li>One week later, on May 27, 1998, Mrs. Hirsch again contacted the law firm of Cabibi and Cabibi. Respondent was away from thé office on this occasion, and thus Mrs. Hirsch spoke with Ms. Bird. Mrs. Hirsch informed Ms. Bird that at her death, she wished to leave respondent a medical office building in Luling. Mrs. Hirsch asked Ms. Bird to draft a codicil to her will to that effect.[2] Ms. Bird prepared a typewritten version of the codicil,[3] which she mailed to Mrs. Hirsch at her home in Luling, along with instructions .that she handwrite the codicil, date and sign it, and return it to the firm. It is undisputed that Ms. Bird did not discuss Mrs. Hirsch’s request with respondent before she drafted the codicil or mailed it to Mrs. Hirsch.
On June 1, 1998, Mrs. Hirsch executed an olographic codicil in substantially the same form as that provided by Ms. Bird. *492 Mrs. Hirsch placed the codicil in an envelope addressed to respondent and put it in the mailbox at the law firm of Cabibi and Cabibi. Respondent reviewed the olo-graphic codicil after it was delivered and instructed Ms. Bird to place it in Mrs. Hirsch’s file.[4] Thereafter, neither respondent nor Ms. Bird had any further contact with Mrs. Hirsch, who died in June 2001.
In November 2001, after he learned of Mrs. Hirsch’s death, respondent filed a petition in the pending succession proceedings to probate the olographic codicil, along with four olographic wills in his possession. Mrs. Hirsch’s niece then filed a motion for summary judgment, alleging that respondent violated Rule 1.8(c) (a lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any 13substantial gift from a client) of the Rules of Professional Conduct by preparing the codicil giving himself a substantial gift from his client. Respondent filed an opposition to the motion for summary judgment, in which he asserted that he did not “prepare an instrument,” as required by Rule 1.8(c), because Mrs. Hirsch executed an olographic codicil.[5] In December 2002, the trial court granted the motion for summary judgment and declared the olo-graphic codicil invalid. In oral reasons for judgment, the trial judge stated that it does not matter “what type of format the will was in. The substance of the law is that I believe this is prohibited.” Respondent did not seek appellate review of the ruling.[6]
DISCIPLINARY PROCEEDINGS

Formal Charges

Following an investigation, the ODC filed formal charges against respondent on April 30, 2004, alleging that his conduct constituted a violation of Rule 1.8(c), as well as Rules 1.7(b) (a lawyer shall not represent a client if the representation may be materially limited by the lawyer’s own interests), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Respondent answered the formal charges and denied any misconduct. Respondent contended that he had no attorney-client relationship with Mrs. Hirsch, and moreover, that he did not personally prepare the codicil in question. Respondent also suggested that in April 2002 he sought an “advisory opinion” to address the Rule]41.8(e) issue; however, an opinion was not forthcoming before the trial court considered the motion for summary judgment in the succession case.[7] Finally, respondent asserted in mitigation that after the codicil was invalidated by the trial court he made no further effort to obtain the bequest made to him by Mrs. Hirsch.

*493
Formal Hearing

This matter proceeded to a hearing before the hearing committee. Respondent and the ODC stipulated to the admission of numerous exhibits, including the power of attorney respondent notarized for Mrs. Hirsch on May 21, 1998; the codicil drafted by Ms. Bird; and the court record of Mrs. Hirsch’s succession proceedings. Respondent also submitted affidavits attesting to his good character and reputation.
The ODC presented the live testimony of Samuel Giberga, Joseph Peiffer, and Ms. Bird. Mr. Giberga and his associate, Mr. Peiffer, filed the motion for summary judgment against respondent in the succession case. Mr. Giberga testified that he assumed there was an attorney-client relationship between respondent and Mrs. Hirsch, such that respondent violated Rule 1.8(c) by preparing a codicil leaving himself a substantial gift. However, when pressed on cross-examination, both Mr. Gi-berga and Mr. Peiffer conceded they had no independent knowledge that respondent actually represented Mrs. Hirsch in a legal capacity. In any event, Mr. Giberga discussed the Rule 1.8(c) issue with respondent prior to filing the motion for summary judgment, but respondent expressed a belief that there was no ethical problem because the codicil executed by Mrs. Hirsch was olographic rather than statutory in form. The issue of whether respondent was Mrs. Hirsch’s attorney was | Rnever raised during the succession proceedings, and hence respondent did not argue that point.
Ms. Bird testified that Mrs. Hirsch called respondent’s office in May 1998 to request a power of attorney. Ms. Bird filled in the blanks of a standard Hansell-Petetin power of attorney form, which Mrs. Hirsch then signed. Mrs. Hirsch did not ask for any advice concerning the transaction and did not ask that the form be explained to her. .Respondent notarized the document and gave it to Mrs. Hirsch. Respondent did not charge a fee for this service.
Several days later, Ms. Bird received a telephone call from Mrs. Hirsch requesting that language be sent to her for an olo-graphic codicil to her will. Ms. Bird testified that Mrs. Hirsch “practically dictated” the language to her. Ms. Bird prepared a typed version of the codicil and sent it to Mrs. Hirsch at her home in Luling. Mrs. Hirsch handwrote the codicil and someone delivered it to respondent’s office by dropping it through the mail slot after hours. Ms. Bird testified that respondent was unaware that she prepared the codicil and sent it to Mrs. Hirsch, as he had been away from the office doing title research. Ms. Bird confirmed that respondent became aware of the codicil after it was returned to the law firm. He expressed no concern about the matter at that time. When respondent learned of Mrs. Hirsch’s death several months after she passed away, he filed a petition to probate the codicil and four olographic wills that were in the files which had been maintained by respondent’s father for Mrs. Hirsch.
On cross-examination, Ms. Bird reiterated that Mrs. Hirsch was a very long-time friend of the Cabibi' family, “one of those people that you kind of grow up knowing from the time you’re born.” Ms. Bird’s grandfather, Mr. Cabibi, Sr., represented Dr. and Mrs. Hirsch in a number of legal matters through about 1989, as |6did an attorney in Luling;[8] however, Ms. Bird *494 testified that respondent never represented Mrs. Hirseh at all.
Concerning the power of attorney, Ms. Bird testified that she could have notarized the document herself in her capacity as a notary public. Mrs. Hirseh did not ask for any legal advice when she executed the power of attorney, and did not discuss any other matters, personal or legal, at that time. No fee was charged to Mrs. Hirseh “as a courtesy to her because of her long time friendship” with Mr. Cabibi, Sr.
Concerning the codicil, Ms. Bird emphasized that it is within her authority as a notary public to prepare wills and codicils; therefore, when Mrs. Hirseh called the office, Ms. Bird drafted the codicil and mailed it to her. This was a “unilateral” act on Ms. Bird’s part and respondent was not consulted. Ms. Bird testified that she was not surprised by Mrs. Hirsch’s bequest because she had made numerous gifts to the family over the years, and had written several wills leaving her estate to respondent or to Mr. Cabibi, Sr. Mrs. Hirseh was not charged a fee for the codicil.
Respondent testified on his own behalf and on cross-examination by the ODC. In his testimony, respondent reiterated that Mrs. Hirseh was his father’s client and that he never represented her. Respondent conceded that he notarized a form power of attorney for Mrs. Hirseh in May 1998, but stated-that he did not provide her with any legal advice relative to the same and did not charge her a fee. Respondent did not believe that an attorney-client relationship was formed as a result of this transaction. Respondent further testified that he had no knowledge of the request for or provision of assistance to Mrs. Hirseh with regard to the olographic codicil until the executed codicil was received in his office. Respondent testified that he did not exercise any influence over Mrs. Hirseh in the preparation of the codicil and that when he saw the |7codicil it was already executed. Respondent stated that he was aware of the ethical rule prohibiting an attorney from writing a will for a client leaving something to himself, but he continued to maintain that the rule only applies to statutory wills. Respondent asserted that he would have withdrawn the codicil from consideration by the trial court if he had known there were any ethical problems with it.

Hearing Committee Recommendation

Following the hearing, the hearing committee issued its report. Based on the evidence presented at the hearing, the committee found that an attorney-client relationship was established between Mrs. Hirseh and respondent at the time the power of attorney was executed, and which continued through the time when the codicil was written and delivered to the Cabibi law firm. The committee further found that respondent violated Rules 1.8(c) and 8.4(a) of the Rules of Professional Conduct indirectly and negligently through the act of Ms. Bird. Specifically, respondent failed to supervise Ms. Bird by permitting her to prepare an instrument giving him a substantial testamentary gift from Mrs. Hirseh. Moreover, respondent failed to promptly notify Mrs. Hirseh of the conflict of interest upon learning of the same by receipt of the olographic codicil in his office in late May or early June 1998. Nevertheless, the court system expended no significant amount of time or effort in litigating the improper codicil. Respondent was obligated by law to file the will in court,[9] and his opposition to the motion for *495 summary judgment did not constitute ^substantial prejudice to the administration of justice. Accordingly, respondent did not violate Rule 8.4(d).
The committee also found no violation of Rule 1.7(b). The committee determined that respondent negligently violated duties he owed to his client. The harm and injury were minor. The committee recognized no aggravating factors, and found the following mitigating factors are present: absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and character and reputation. The committee further observed in mitigation that there is no complaining third party in this case.
Considering the circumstances, the committee recommended that respondent be “privately admonished, or, if that is not possible under the Rules, then he be reprimanded.” [10]
The ODC objected to the hearing committee’s determination that a violation of Rule 1.7(b) was not proven by clear and convincing evidence, and to the leniency of the sanction recommended by the committee. The ODC suggested that respondent’s conduct was negligent and knowing, and that a short suspension is appropriate in light of the ABA’s Standards for Imposing Lawyer Sanctions, the prior jurisprudence of this court, and the aggravating and mitigating factors present.

19.Disciplinary Board Recommendation

After reviewing the record, the disciplinary board adopted the hearing committee’s factual findings. The board specifically agreed with the committee’s finding that an attorney-client relationship existed between respondent and Mrs. Hirsch, reasoning that she sought and received from respondent “advice and assistance in matters pertinent to the legal profession.” The board also concurred in the committee’s finding that respondent failed to supervise Ms. Bird in the performance of her notarial activities. It was incumbent upon respondent to make reasonable efforts to ensure that Ms. Bird’s conduct was compatible with the professional obligations of an attorney and to take corrective action at a time when the consequences of his being named in his client’s codicil as a beneficiary could have been avoided or mitigated. Having failed to do so, the board agreed that respondent failed to supervise Ms. Bird.
Based on these factual findings, the board determined that the hearing committee properly applied the Rules of Professional Conduct. The board found there is clear and convincing evidence that respondent violated Rules 1.8(c) and 8.4(a) by allowing Ms. Bird to prepare an instrument giving him a substantial testamentary gift from a client. The board also agreed with the 'committee’s finding that Rules 8.4(d) and 1.7(b) were not violated.
The board rejected the committee’s determination that respondent acted negligently. Respondent became aware of the executed codicil after Mrs. Hirsch returned it, but he did not notify Mrs. Hirsch of the invalidity of her codicil. Respon *496 dent thus had an opportunity to correct the error and he failed to do so. Accordingly, the board found respondent’s actions were knowing. Respondent violated duties owed to his client and the legal profession. Mrs. Hirsch’s | mtestamentary freedom was defeated as a result of respondent’s actions. Under the ABA’s Standards for Imposing Lawyer Sanctions, the baseline sanction for respondent’s misconduct is a suspension from the practice of law.
In aggravation, the board recognized respondent’s substantial experience in the practice of law (admitted 1962). The board adopted the mitigating factors cited by the committee, with the exception of the committee’s finding that there is no complaining party in this case. The board pointed out that under the ABA Standards, the failure of an injured client to complain is a factor that is neither aggravating nor mitigating.
The board then considered the prior jurisprudence involving conduct similar to respondent’s. In In re Grevemberg, 02-2721 (La.2/25/03), 838 So.2d 1283, the attorney was suspended for one year for drafting a will in which he named himself as residual legatee of his client’s estate, then persisted in defending his “rights” under the will when the client’s relatives challenged it. In In re Blair, 02-2164 (La.2/25/03), 840 So.2d 1191, the lawyer was suspended for three months for preparing a will containing a legacy in favor of his wife. The lesser sanction was imposed in part because Blair’s actions resulted from negligence rather than any improper motive, as in Grevemberg.
With regard to respondent’s failure to properly supervise his non-lawyer employee, the board cited In re Wilkinson, 01-2310 (La.1/15/02), 805 So.2d 142. Wilkinson was suspended for sixty days for failing to supervise his law clerk in the handling of a succession matter.
Based on the proven misconduct, the board recommended that respondent be suspended from the practice of law for three months. The board further | ^recommended that respondent be assessed with all costs and expenses of these proceedings.
Two board members dissented and would publicly reprimand respondent. The dissenting members particularly noted the absence of any significant harm to respondent’s client or the legal system, and the many mitigating factors present, including a forty-year unblemished record of service.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
It is undisputed that respondent’s daughter, a notary public, prepared an instrument giving respondent a substantial gift from his client, Mrs. Hirseh. Objectively this conduct constitutes a violation of Rules 1.8(c) and 8.4(a) of the Rules of Professional Conduct. However, we find respondent’s actions are far less egregious than those seen in our two prior Rule 1.8(c) cases, Grevemberg and Blair. Here, no harm was caused as a result of the misconduct, which was unintentional and attributable to the fact that respondent did not think of Mrs. Hirseh as a client, but only as a longtime family friend.[11]
*497 Furthermore, the applicable mitigating factors are entitled to great weight. Respondent has been a practicing attorney since 1962 and has an unblemished disciplinary record. We also consider the absence of any dishonest or selfish motive and respondent’s good character and reputation. Under the totality of the 11acircumstances, the board’s recommendation of an actual period of suspension is unduly harsh and formal discipline is not warranted. See In re Hartley, 03-2828 (La.4/2/04), 869 So.2d 799; In re Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019.
In summary, given the long-standing, close personal relationship between the Cabibi and Hirsch families and the extremely limited interaction between Mrs. Hirsch and respondent as an attorney, we decline to impose formal discipline in this matter. While we in no way condone respondent’s actions, we therefore dismiss the formal charges.
DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the formal charges against respondent be and hereby are dismissed.
CALOGERO, C.J., concurs.
JOHNSON, J., dissents.
KNOLL, J., concurs in result.

 Retired Judge Philip C. Ciaccio, assigned as Justice pro tempore, sitting for Associate Justice Catherine D. Kimball.

. Respondent’s father, attorney Charles E. Cabibi, Sr., had a longstanding personal relationship with Mrs. Hirsch and her husband, Dr. Julian F. Hirsch. Mr. Cabibi, Sr. also handled various legal matters for Dr. and Mrs. Hirsch. Dr. Hirsch died in 1985; Mr. Cabibi, Sr. died in 1993.

. Mrs. Hirsch had executed four previous olo-graphic wills leaving her property to Mr. Ca-bibi, Sr. or to respondent, his wife, and children. These wills were dated July 2, 1980 (leaving Mrs. Hirsch's entire estate to "my dear friend,” Mr. Cabibi, Sr. or respondent and his family); May 21, 1983 (leaving Mrs. Hirsch's entire estate to "my good friend,” Mr. Cabibi, Sr. or respondent and his family); July 8, 1983 (leaving the naked ownership of Mrs. Hirsch’s estate to Mr. Cabibi, Sr. and respondent); and July 20, 1989 (leaving Mrs. Hirsch’s entire estate to "my dear friend,” Mr. Cabibi, Sr. or respondent and his family).

.La. R.S. 35:2 authorizes a notary public “to receive wills, make protests, matrimonial contracts, conveyances, and generally, all contracts and instruments of writing.”

. This was the file which had been maintained by respondent’s late father.

. Respondent also asserted that it had not been established whether Mrs. Hirsch's bequest constituted a "substantial” gift, as required by Rule 1.8(c). Documents subsequently filed in the succession proceeding placed the value of the real estate at issue at $141,770.

. The Hirsch succession was not finally concluded until December 2003, when the legatees under the various wills settled their claims.

.Respondent initially contacted the Louisiana State Bar Association concerning the matter; the LSBA, in turn, suggested that respondent write to the ODC. When respondent did so, the ODC treated his correspondence as a self-report of professional misconduct.

. Mr. Norman Pitre represented Mrs. Hirsch in matters involving the Luling Medical Clinic from June 1985 until her death in June 2001.

. See La.Code Civ. P. art. 2853, which provides:
If a person has possession of a document purporting to be the testament of a de *495 ceased person, even though he believes that the document is not the valid testament of the deceased, or has doubts concerning the validity thereof, he shall present it to the court with his petition praying that the document be filed in the record of the succession proceeding.
A person so presenting a purported testament to the court shall not be deemed to vouch for its authenticity or validity, nor precluded from asserting its invalidity.

. An admonition cannot be imposed after formal charges have been instituted. Supreme Court Rule XIX, § 10(A)(5).

. Certainly there is no evidence to support the board’s finding that Mrs. Hirsch's “testamentary freedom’’ was "defeated” as a result of the conduct of respondent and his daughter. Indeed, Mrs. Hirseh had executed four previous olographic wills leaving her proper *497 ty — in some cases her entire estate — to the Cabibi family.