# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #053

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of December, 2018**, are as follows:

**PER CURIAM**:

2018-B-1076        IN RE: GREGORY COOK

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Gregory Cook, Louisiana Bar Roll number 34268, be and he hereby is suspended from the practice of law for a period of six months.  It is further ordered that all but thirty days of this suspension shall be deferred.  Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of one year, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan.  Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

WEIMER, J., concurs in part, dissents in part and assigns reasons.
HUGHES, J., concurs in part, dissents in part and would fully defer the period of suspension.

SUPREME COURT OF LOUISIANA

NO. 2018-B-1076

IN RE: GREGORY COOK

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Gregory Cook, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

In February 2016, Cedric Duncan and his sisters, Pamelian Norwood and Angela Freeman, hired respondent to handle the succession of their mother, Ethel Duncan, who died intestate on February 11, 2016. Respondent charged a flat fee of $1,800, and the siblings agreed to split the fee three ways. Respondent was paid the entire $1,800 and provided Cedric with a receipt for $600. Nevertheless, respondent claimed he never received any money directly from Cedric, asserting that Angela paid Cedric's portion of the fee.

The petition for possession respondent prepared and filed excluded Cedric as an heir to Ethel's estate. Respondent claimed Pamelian and Angela told him Cedric no longer wished to be a part of the succession. However, respondent never verified this with Cedric. In June 2016, the judge signed the judgment of possession splitting Ethel's property equally between Pamelian and Angela.

When Cedric received a copy of the judgment of possession, he hired attorney Kristina Shapiro to reopen the succession, paying her $3,000 for the representation.

Ms. Shapiro filed a petition to annul the judgment of possession and for damages, naming Pamelian, Angela, and respondent as defendants. Ms. Shapiro also filed a motion to reopen the succession.

Respondent filed an answer to the petition to annul the judgment of possession and for damages on behalf of Pamelian, Angela, and himself. Respondent also appeared at the December 1, 2016 hearing to reopen the succession and argued on behalf of Pamelian and Angela. The judge reopened the succession and named Cedric as the administrator. Shortly thereafter, respondent withdrew from the representation of Pamelian and Angela.

## DISCIPLINARY PROCEEDINGS

In July 2017, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.7 (conflict of interest: current clients) and 1.9 (duties to former clients). Respondent answered the formal charges, indicating that if he mishandled the succession, he did not do so intentionally.

*Formal Hearing*

This matter proceeded to a formal hearing. Respondent testified that he received most of the information and instructions from Angela, who only told him that she and Pamelian were Ethel's heirs. Respondent recalled that Angela brought him a $600 check and told him to mail a receipt for $600 to Cedric at the address listed as Ethel's house in the succession documents. Angela also told him to mail a copy of the judgment of possession to Cedric at the same address. Nevertheless, respondent presumed Cedric was not an heir because Cedric did not speak during their first meeting in February 2016 when the siblings hired him. Respondent claimed Cedric would not answer his questions during that first meeting. Therefore,

2

he took Angela's word about who the heirs were and never requested birth certificates as proof of heirship. While respondent admitted that he was not diligent in determining Ethel's heirs, he essentially blamed Cedric because Cedric never specifically told him that he was an heir. He also claimed Cedric never paid him and disappeared in the middle of the representation. However, he acknowledged that he moved too fast and "dropped the ball" in his handling of Ethel's succession. He stated that he withdrew from the representation because Angela had provided him with false information, and he indicated that he has put office procedures in place to prevent this situation from happening again.

Cedric testified that he first met respondent prior to his mother's death when respondent drafted a medical power of attorney, which transferred the authority to make medical decisions about his mother from him to his sister. Cedric also testified that, while speaking to respondent, he referred to Ethel as his mother and referred to Pamelian and Angela as his sisters. When he and his sisters later hired respondent to handle Ethel's succession, he gave Angela $600 in cash to give to respondent as his portion of the $1,800 fee. Cedric further claimed respondent advised him and his sisters during their initial meeting that Ethel's possessions would be divided equally between the three of them. When that did not occur, Cedric hired Ms. Shapiro to represent him. Although Ms. Shapiro was able to get the succession reopened and get him named as administrator, the succession has not yet been resolved, and he has paid Ms. Shapiro approximately $5,000 to date. He and his sisters now have a contentious relationship.

Ms. Shapiro testified that there are no provisions allowing for the exclusion of a child in an intestate succession unless the child has provided a written renunciation. As such, she agreed to represent Cedric in reopening Ethel's succession. She confirmed that Cedric has paid her approximately $5,000 for the

3

representation. Ms. Shapiro also indicated that the succession has not yet been resolved because Pamelian and Angela are not responding to discovery requests.

*Hearing Committee Report*

After considering the testimony and evidence presented at the hearing, the hearing committee found the following: Respondent admitted he was hired by Cedric's siblings to open Ethel's succession and was paid a portion of the fee to be attributed to Cedric. Respondent contended he did not ask, and was not told, that Cedric was an actual heir entitled to a share of the succession. After Ethel's death, Angela set up an appointment with respondent about handling the succession. Angela, Pamelian, and Cedric were all present at the meeting to discuss the succession with respondent. During the meeting, respondent agreed to handle the succession for a flat fee of $1,800. Respondent received information mainly from Angela, and the petition for possession he prepared did not include Cedric as an heir. The evidence showed respondent prepared an affidavit of death, domicile, and heirship based upon information provided by Angela and Pamelian, and they signed the affidavit under oath; the affidavit did not include Cedric as an heir. Ultimately, Cedric hired Ms. Shapiro to reopen the succession, and respondent filed an answer on behalf of Angela and Pamelian to reject Cedric's claims. Shortly thereafter, respondent sent Angela and Pamelian a disengagement letter.

Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. Respondent engaged in a conflict of interest when he represented Angela and Pamelian after Cedric, his other client, filed a petition to annul the judgment of possession. Once Cedric moved to reopen the succession, respondent should have immediately withdrawn from representing any party in the proceeding. The committee determined that respondent negligently violated duties owed to Cedric, causing Cedric actual harm.

4

Under these circumstances, the committee recommended respondent be suspended from the practice of law for six months, fully deferred, subject to respondent's attendance at the Louisiana State Bar Association's ("LSBA") Ethics School. The committee further recommended that respondent be ordered to reimburse Cedric for the attorney's fees he paid to reopen Ethel's succession.

The ODC objected to the hearing committee's report, arguing that the recommended sanction was too lenient. The ODC also argued that the committee erred in determining respondent acted negligently rather than knowingly.

*Disciplinary Board Recommendation*

After reviewing this matter, the disciplinary board determined that the hearing committee's factual findings were not manifestly erroneous and were supported by the record. Based on those facts, the board determined that the committee correctly found respondent in violation of Rules 1.7 and 1.9 of the Rules of Professional Conduct.

The board found that respondent acted with a "high degree of negligence" in violating duties owed to his clients. His conduct caused significant actual harm in that Cedric has had to pay his new attorney $5,000 and the otherwise simple succession (no liabilities other than attorney's fees and a piece of immoveable property valued at $50,000 as the only asset) remains unresolved. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is a public reprimand.

The board found no aggravating factors present. However, in mitigation, the board found the following: the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, inexperience in the practice of law (admitted 2012), and remorse.

5

After further considering this court's prior jurisprudence addressing similar misconduct and emphasizing the amount of harm respondent caused, the board determined a short period of active suspension is appropriate. Accordingly, the board recommended respondent be suspended from the practice of law for six months, with all but thirty days deferred, followed by one year of probation with the condition that respondent attend the LSBA's Ethics School. The board also recommended respondent be ordered to pay restitution to Cedric in the amount he has spent on attorney's fees and costs to reopen the succession.

Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record of this matter supports a finding that respondent engaged in a conflict of interest. This misconduct amounts to a violation of the Rules of Professional Conduct as alleged in the formal charges.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining

6

a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent negligently violated duties owed to his clients, the legal system, and the legal profession, causing actual harm. We agree with the disciplinary board that although the baseline sanction is a public reprimand, a period of active suspension is warranted in light of the significant harm caused by respondent's misconduct. The record supports the mitigating factors found by the board. The main aggravating factor present is respondent's indifference to making restitution.

Turning to the issue of an appropriate sanction, we find that *In re: Blair*, 02-2164 (La. 2/25/03), 840 So. 2d 1191, and *In re: Hoffman*, 03-2499 (La. 9/9/04), 883 So. 2d 425, are instructive. In *Blair*, an attorney prepared a will containing a legacy in favor of his wife and simultaneously represented two clients who had an irreconcilable conflict. For this negligent misconduct, we suspended the attorney from the practice of law for three months. In *Hoffman*, an attorney represented three clients in a succession matter in which two of the clients had a conflict of interest with the third client, resulting in serious actual harm to the first two clients. For this knowing misconduct, we suspended the attorney from the practice of law for three months but fully deferred the suspension, subject to one year of probation.

Considering these cases, we will adopt the board's recommendation and suspend respondent from the practice of law for six months, with all but thirty days deferred. Following completion of the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of one year subject to the

following conditions: (1) respondent shall attend and successfully complete the LSBA's Ethics School, and (2) respondent shall make restitution to Cedric Duncan in the amount of $600 plus legal interest.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Gregory Cook, Louisiana Bar Roll number 34268, be and he hereby is suspended from the practice of law for a period of six months. It is further ordered that all but thirty days of this suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of one year, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**12/05/18**

# SUPREME COURT OF LOUISIANA

## NO. 18-B-1076

## IN RE: GREGORY COOK

*ATTORNEY DISCIPLINARY PROCEEDINGS*

**WEIMER, J.**, concurring in part and dissenting in part.

I believe this young attorney found himself embroiled in a contest among siblings, and he naively relied on affidavits submitted from only one side of that rivalry. Therefore, I believe a shorter period of actual suspension would adequately serve the purposes of the disciplinary system. I further note that the hearing committee suggested a fully deferred suspension, and the disciplinary board found no aggravating factors, but several mitigating factors. Those mitigating factors are: the absence of a prior disciplinary record; the absence of a dishonest or selfish motive; full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings; inexperience in the practice of law; and remorse.

Accordingly, I respectfully dissent inasmuch as I would defer a greater portion of respondent's suspension. I otherwise concur in the sanction and underscore the appropriateness of respondent's probation with the conditions of successful completion of Ethics School and restitution of $600 plus legal interest to Mr. Duncan.

**SUPREME COURT OF LOUISIANA**

**No. 2018-B-1076**

**IN RE:  GREGORY COOK**


**ATTORNEY DISCIPLINARY PROCEEDING**


Hughes, J., concurs in part, dissents in part, and would fully defer the period of suspension.