| ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disci-
 
 *744
 
 plínary Counsel (“ODC”) against respondent, Richard Collins Dalton, an attorney licensed to practice law in Louisiana. Respondent appeals a ruling of the disciplinary board ordering that he be publicly reprimanded.
 

 UNDERLYING FACTS
 

 In November 2005, Tyrone Barrow, Sr. hired respondent to represent him in a redhibition claim against Ford Motor Company (“Ford”). Mr. Barrow signed respondent’s fee agreement, which set forth the following terms:
 

 1. Attorney’s fees are calculated at $250 per hour, and paralegal fees are calculated at $75 per hour. The attorney will maintain time and billing records for the legal work he performs, and his time will be maintained in fifteen-minute increments;
 

 2. The attorney’s fees are classified as an additional element of the damages to be paid by the defendant and will be in addition to any damages or award received in settlement or judgment;
 

 |23. The attorney’s employment is on a contingency fee basis, and if no recovery is made, the client will not pay any attorney’s fees or expenses; and
 

 4. If recovery is made, the attorney may deduct all costs and expenses.
 

 In December 2005, respondent filed a petition for redhibition and damages on Mr. Barrow’s behalf. On October 25, 2006, Mr. Barrow signed an authorization to settle his claim against Ford for $5,400, plus attorney’s fees of $4,000 and court costs of $600, for a total settlement of $10,000. By signing the authorization to settle, Mr. Barrow also authorized respondent to execute the release and settlement documents on his behalf and to endorse the settlement check on his behalf. As such, on Mr. Barrow’s behalf, respondent executed the receipt and release, reflecting that Mr. Barrow received a settlement of $10,000. Respondent then disbursed $5,400 to Mr. Barrow as his portion of the settlement, and the lawsuit was dismissed.
 

 In December 2006, Mr. Barrow filed a complaint against respondent with the ODC. In his complaint, Mr. Barrow alleged that he should have received the entire $10,000, instead of only $5,400. He also alleged that respondent misled him by failing to inform him that Ford offered to settle with him for $10,000 and not $5,400.
 

 In response to the complaint, respondent advised the ODC that it -is customary for redhibition defendants to send one settlement check in an amount that includes the attorney’s fees and costs. Respondent subsequently provided the ODC with an accounting of his time and expenses, indicating that he worked 30.75 hours on Mr. Barrow’s case, which amounted to $6,900 in attorney’s fees, and incurred expenses totaling $670.
 
 [1]
 

 | ¡DISCIPLINARY PROCEEDINGS
 

 In February 2008, the ODC filed one count of formal charges against respondent, alleging that his conduct as set forth above violated Rules 1.2(a) (scope of the representation), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.5(b) (the scope of the representation and
 
 *745
 
 the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client), 1.5(c) (contingency fee agreements), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
 

 Respondent answered the formal charges, denying any misconduct. Accordingly, the matter proceeded to a formal hearing on the merits.
 

 Hearing Committee Report
 

 After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
 

 Respondent’s fee agreement with Mr. Barrow specified the scope of the representation in connection with Mr. Barrow’s redhibition claim. The fee agreement specifically and clearly stated that attorney’s fees would be charged only upon recovery and then at $250 per hour for attorney time and $75 per hour for paralegal time. The fee agreement also clearly noted that the litigation and other expenses would be deducted from the recovery. Respondent provided the fee agreement, which was specified as a contingency fee agreement, to Mr. Barrow in writing and before he filed the redhibition claim.
 

 |4Mr. Barrow testified that he received the fee agreement in the mail, read and understood it, and signed it. He understood that, if his claim was unsuccessful, then he would not have to pay any money to respondent. He also testified that, if his claim was successful, then Ford would be responsible for paying his attorney’s fees. Mr. Barrow further understood that respondent would deduct all costs and expenses from the recovery if his claim was successful. He obtained this information from the fee agreement provided by respondent.
 

 Regarding the settlement, Mr. Barrow consented in writing to settle his claim with Ford for $5,400, with $4,000 for attorney’s fees and $600 in court costs, by signing the authorization to settle. Subsequently, Mr. Barrow received $5,400 as promised. He also signed the receipt and release.
 

 Based on these facts, the committee determined that the ODC failed to prove by clear and convincing evidence any violations of the Rules of Professional Conduct. Accordingly, the committee recommended that all charges against respondent be dismissed.
 

 The ODC filed an objection to the hearing committee’s recommendation.
 

 Ruling of the Disciplinary Board
 

 Based on its review of the record, the disciplinary board agreed with the hearing committee that respondent’s fee agreement itself did not violate the Rules of Professional Conduct.
 
 [2]
 
 The board, however, disagreed with the committee that respondent did not engage in ethical misconduct. The board found that respondent | skept no contemporaneous time records while he was working.
 
 [3]
 
 Therefore, at no
 
 *746
 
 time did respondent inform Mr. Barrow of the amount of hours he had worked on the case. Thus, Mr. Barrow’s consent to a settlement of $5,400 for himself and $4,000 for respondent’s fee was not fully informed. Neither did respondent provide Mr. Barrow with a full accounting once the case settled. Furthermore, respondent testified that he did not negotiate his fee settlement based on the actual hours he worked, which was the method specified in the fee agreement. Instead, he negotiated his fee settlement based on 1) his own sense of what was fair and 2) his experiences in negotiating fees in other cases. Neither of these factors was disclosed to Mr. Barrow. Thus, respondent made unilateral changes to the fee agreement and failed to fully and accurately disclose those changes to Mr. Barrow.
 

 Based on these findings, the board determined that respondent violated Rules 1.2(a), 1.4, 1.5(b), and 1.5(c). The board also determined that respondent negligently violated duties owed to his client and the legal profession. However, the board found no evidence of harm to Mr. Barrow. After reviewing the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is a public reprimand.
 

 In aggravation, the board found vulnerability of the victim and substantial experience in the practice of law (admitted 1994). In mitigation, the board found the following factors: absence of a prior disciplinary record and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
 

 | r,Under these circumstances, the board ordered that respondent be publicly reprimanded. The board also ordered that respondent be assessed with all costs and expenses of these proceedings.
 

 As previously noted, respondent has appealed the board’s ruling to this court. On June 24, 2009, we ordered the parties to submit briefs (without oral argument) addressing the issue of whether the record supports the disciplinary board’s report. Both respondent and the ODC filed briefs in response to the court’s order.
 

 DISCUSSION
 

 The record of this matter reveals that respondent entered into a fee agreement with Mr. Barrow on an hourly basis, collection of which was contingent upon the client’s recovery. The ODC concluded this fee arrangement violated Rules 1.5(b), 1.5(c), 8.4(a), and 8.4(c). Both the hearing committee and the disciplinary board disagreed and found no misconduct with respect to the fee agreement itself, as Mr. Barrow testified that he read and understood the fee agreement before signing it. We see no error in this finding.
 

 While this court has never addressed the appropriateness of this unusual type of contingency fee arrangement (i.e., where an attorney charges an hourly rate, but collection of the fee is contingent on the client’s recovery), the issue was discussed in an advisory opinion rendered by the South Carolina Bar’s Ethics Advisory Committee. In opinion no. 87-07, the Committee stated that “[i]f the attorneys fee is reasonable and the client has full knowledge of the fee arrangement, it is generally deemed appropriate.”
 

 Similarly, Rule 1.5(c) of Louisiana’s Rules of Professional Conduct, which governs contingency fee arrangements, provides that “[t]he contingency fee |7agreement shall state the method by which the fee is to be determined.” Although the rule goes on to imply that the fee is a percentage of the client’s recovery,
 
 *747
 
 a fee based on an hourly rate is not expressly prohibited. Accordingly, we do not find the fee agreement between respondent and Mr. Barrow clearly violated any provisions of the Rules of Professional Conduct.
 

 While we find nothing improper in the fee agreement itself, we recognize that under a strict reading of Rules 1.4 and 1.5(b), respondent should have obtained his client’s informed consent when he reduced his fees from $6,900 to $4,000. However, we conclude that any harm resulting from these rule violations was
 
 de minimis
 
 in nature, as the reduction of fees was actually to the client’s benefit. Moreover, we find respondent’s actions were not the product of any selfish or dishonest motive. We also observe respondent has an unblemished disciplinary record dating back to 1994.
 

 Not every violation of the Rules of Professional Conduct warrants the imposition of formal discipline.
 
 See, e.g., In re: Cabibi,
 
 05-1217 (La.2/22/06), 922 So.2d 490, and
 
 In re: Hartley,
 
 03-2828 (La.4/2/04), 869 So.2d 799. Given the limited resources of the disciplinary system, the ODC should act wisely to ensure that the charges it chooses to file will satisfy the overarching goals of the disciplinary process, namely, maintaining high standards of conduct, protecting the public, preserving the integrity of the profession, and deterring future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987).
 

 Under the totality of the circumstances in this case, we do not find respondent’s actions rise to the level of sanctionable misconduct. Therefore, we will dismiss the formal charges against respondent. However, we take this opportunity to caution respondent to scrupulously comply with his obligations under Rules 1.4 and Rule 181.5(b) in the future and ensure that he fully communicates any changes in fee arrangements to his clients.
 

 DECREE
 

 Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that the formal charges against respondent be and hereby are dismissed.
 

 *
 

 Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice
 
 Pro Tempore,
 
 participating in the decision.
 

 [1]
 

 . Respondent did not provide Mr. Barrow with this accounting or verbally inform him of these amounts before Mr. Barrow signed the authorization to settle.
 

 [2]
 

 . Citing 1 Hazard
 
 &
 
 Hodes, The Law of Law-yering, § 8.12 (2007), the board noted that under Model Rule 1.5(c), which is identical to Louisiana’s Rule 1.5(c), ”[o]rdinarily, the fee will be expressed as a percentage of the gross or net recovery ... However, there is no reason why contingent fees could not be charged in other contexts."
 

 [3]
 

 . The board noted that the record contains an accounting of respondent’s time. However, given respondent's testimony, the board determined that respondent did not keep this accounting contemporaneously with the work performed. Even if he had kept a contemporaneous accounting, respondent testified that he never provided the number of hours actu
 
 *746
 
 ally worked to Mr. Barrow during settlement discussions.